UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT REVELS III,

    Defendant.

CASE NO. CR10-5268BHS

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

This matter comes before the Court on Defendant Robert Revels III's Motion to Suppress Evidence (Dkt. 41). The Court has considered the pleadings filed in support of, and in opposition to, the motion and the remainder of the file. For the reasons stated herein, the Court denies the motion.

## I. PROCEDURAL HISTORY

On April 2, 2010, Plaintiff United States of America (the "Government") charged Defendant Robert Revels III ("Mr. Revels") in a three-count indictment with (1) armed bank robbery, in violation of 18 U.S.C. § 2113(a)(2); being armed in the commission of a violent felony, in violation of 18 U.S.C. § 924(c); and being a prohibited person in

possession of a firearm, in violation of 18 U.S.C. § 924(e).  Dkt. 1.  Trial is currently scheduled for December 13, 2011.  Dkt. 49.

On September 1, 2011, Mr. Revels filed the instant motion to suppress certain evidence obtained during his initial stop and arrest.  Dkt. 41.  On September 8, 2011, the Government responded.  Dkt. 44.  On November 2, 2011, the Court conducted an evidentiary hearing on the motion to suppress.  Dkt. 57.  At the close of the hearing, the Court directed the parties to file additional briefing on certain questions.  Dkt. 58.  The parties submitted the requested briefing between November 9, 2011 and November 23, 2011.  *See* Dkts. 59, 61, 65, 66.

## II. FACTUAL BACKGROUND

Shortly before 1:30 p.m. on March 10, 2010, a masked man entered and robbed at gunpoint a U.S. Bank located at 870 South 38th Street in Tacoma, Washington.  Dkt. 36 at 2; Dkt. 44 at 2-3.  During the robbery, a bank employee gave the robber cash with a hidden tracking transmitter inside.  *Id*. at 1-2. Witnesses described the robber as a black male between 5'7" and 6'0" in height, with a "medium" build.  Dkt. 36 at 2; Dkt. 44 at 3.  They reported that the robber wore jeans and a dark sweatshirt or coat, and fled the bank on foot.  *Id*.

Tacoma Police Department ("TPD") officers responded to the bank and used the radio signal from the cash-embedded transmitter to locate the robber.  *Id*.; Dkt. 36 at 2.  Two of those TPD officers, Adam Hofner and Robin Blackburn, used a receiver in their patrol car to track the transmitter to near the Tacoma Dome.  Dkt. 44 at 3. Approximately ten minutes after the robbery, the receiver in Officer Hofner's and Officer Blackburn's

1  car began to emit a strong signal, indicating that the transmitter was close.  *Id*. at 4.  The

2  directional indicator on the receiver focused the officers' attention on a man walking

3  alone on a bridge, approximately 2.5 miles from the location of the bank robbery.  *Id*.

4  That man was now-defendant Mr. Revels.  *Id*.

5       Even though the clothes on the man at whom the receiver pointed did not match

6  those of the robber, Officers Hofner and Blackburn determined that the man matched the

7  robber's physical description.  *Id*.  Specifically, the man was black; he appeared to be in

8  the general age and height range of the robber; and he had a similar build.  *Id*.  Based on

9  this apparent physical match and the strong transmitter signal, Officers Hofner and

10 Blackburn stopped their patrol car and ordered the man, Mr. Revels, on the ground at

11 gunpoint.  Mr. Revels complied and was immediately handcuffed.  *Id*.  At the time, the

12 officers did not tell Mr. Revels that he was being arrested.  *Id*.  At the evidentiary

13 hearing, Officer Hofner characterized the initial stop as a *Terry* investigatory stop.  Dkt.

14 73 at 16.

15      After Mr. Revels lay face down, Officer Hofner testified that he immediately

16 frisked Mr. Revels for weapons and contraband, while Officer Blackburn kept watch.  *Id*.

17 at 16, 53-54.  Officer Hofner frisked Mr. Revels's back and sides and, on finding nothing,

18 instructed Mr. Revels to turn over.  *Id*. at 17.  The record is unclear on whether

19 Mr. Revels indeed resisted Officer Hofner's instructions or simply was unable to roll over

20 on his own.  In either case, Officer Hofner assisted Mr. Revels in rolling over and, during

21 the process, heard a "swishy sound" coming from the waist of Mr. Revels's shorts.  *Id*. at

22

17-18.  In continuing the pat-down, Officer Hofner felt "something firm" and then located a black plastic bag with some money falling out.  *Id*. at 18, 33.

Officer Hofner testified that Mr. Revels immediately attempted to explain the origin of the bag, although Officer Hofner conceded that he was not sure whether he asked Mr. Revels any questions to prompt the explanation.  *Id*. at 20-21.  Mr. Revels told Officers Hofner and Blackburn that he retrieved the bag after he saw a black male in a white car throw the bag over the bridge.  *Id*. at 20.

Officer Hofner then placed a still-handcuffed Mr. Revels in the back seat of the patrol car, at which time Officer Hofner claims he advised Mr. Revels of his *Miranda* rights.  *Id*. at 22.  The officers then transported Mr. Revels to the Pierce County jail.  *Id*. at 26.  During the transport, Mr. Revels again recounted that he had found the bag of money after witnessing another man drop it from a white car.  *Id*. at 26-27.

## III. DISCUSSION

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.  U.S. Const. amend. IV.  Aside from a few exceptions, warrantless searches are per se unreasonable.  *Katz v. United States*, 389 U.S. 347, 357 (1967).

Here, Mr. Revels asks the Court to suppress physical evidence, including the approximately $8,100 in cash, that was seized from him during the initial stop, as well as all post-arrest statements attributed to him.  Dkt. 36 at 1.  As explained below, the Court finds that the officers had probable cause to arrest Mr. Revels based on the information provided by the tracking transmitter and the physical description of the robber.

Moreover, even if probable cause did not exist, the Court finds that the officers conducted a valid *Terry* stop and that the subsequent search and seizure did not exceed the scope of a *Terry* frisk.

**A.     Probable Cause**

Probable cause exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been . . . committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). For information to amount to probable cause, it does not have to be conclusive of guilt, and it does not have to exclude the possibility of innocence. *Id.* at 1172, 1178 (police are not required "to believe to an absolute certainty, or by clear and convincing evidence, or even by a preponderance of the available evidence" that a suspect has committed a crime). Instead, all that is required is a "fair probability," given the totality of the evidence, that such is the case. *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).

Here, the Court concludes that Officers Hofner and Blackburn had sufficient probable cause to arrest Mr. Revels based on information derived from the tracking transmitter and the physical description of the robber. Notwithstanding that Officer Hofner subjectively believed that he was merely conducting an investigatory *Terry* stop during his initial contact with Mr. Revels, the Court finds that the circumstances, as then-existing, favor a finding that probable cause existed.

First, the receiver conclusively directed the officers' attention at Mr. Revels, who was walking alone on a bridge with little surrounding activity. Dkt. 73 at 63. Despite

Mr. Revels's efforts to undermine the capabilities of the tracking device at issue here, the Government offered sufficient and credible evidence, which Mr. Revels did not rebut, that tracking devices are reliable and that the one(s) in use here worked accurately and effectively. Indeed, retired Detective Larry Andren and Officer Gary Roberts testified extensively about the near-precision quality of the tracking system and the extensive experience that they had with the system in successfully tracking and apprehending suspects. Dkt. 73 at 75-80, 147-148. The Court finds that the information gleaned from the tracking device alone was sufficient to establish probable cause.[1]

Second, the officers' determination that the man identified by the tracking receiver matched the physical description of the robber was not unreasonable. Dkt. 73 at 13, 53. Although the Court acknowledges that the clothes on Mr. Revels did not match those on the robber, Officer Hofner testified that it was not uncommon in his experience for robbers to shed clothing after the commission of a crime. Dkt. 73 at 14-15.

**B.  *Terry* Stop**

Because the Court denies this motion based on the finding that officers had probable cause to arrest Mr. Revels before they located the money bag, the Court need not address the question of whether the officers exceeded the limits of a *Terry* frisk. Nonetheless, the Court finds that the discovery and seizure of the bag of money was

---

[1] While the Ninth Circuit has not addressed whether tracking data alone is enough for probable cause, it has held that dog sniffs alone are sufficient. *See United States v. Legenfelter*, 997 F.2d 632, 639 (9th Cir. 1993); *see also United States v. Levine*, 80 F.3d 129, 133 (5th Cir. 1996) (holding that a tracker is at least as reliable as a dog sniff). Moreover, as Mr. Revels acknowledges, the Fifth Circuit has held that tracking data can, without more, establish probable cause. *See United States v. Shannon*, 21 F.3d 77, 80-82 (5th Cir. 1994).

within the bounds of *Terry*. This finding provides a second independent basis for denying the motion.

It is well settled that "[t]he purpose of a *Terry* stop is 'to allow the officer to pursue his investigation without fear of violence.'" *United States v. Taylor*, 716 F.2d 701, 708 (9th Cir. 1983) (quoting *Adams v. Williams*, 407 U.S. 143 (1972)). Generally, "[a] *Terry* stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons." *United States v. Robertson*, 833 F.2d 777, 780 (9th Cir. 1987). "An investigatory stop must be justified by some objective manifestation that the person stopped is . . . engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). The Court must consider the totality of the circumstances to determine whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417-18.

Here, as an initial matter, the Court finds that Officers Hofner and Blackburn had reasonable suspicion to detain Mr. Revels. Thus, the fundamental question before the Court is whether, considering the totality of the circumstances in this case, it was reasonable for Officer Hofner to frisk Mr. Revels for weapons and to feel or examine any containers on Mr. Revels that might have held weapons. As explained below, the Court finds that the search and seizure was reasonable.

Officer Hofner testified that he initially noticed a "slight bulge towards the front" of Mr. Revels. Dkt. 73 at 31. Once Officer Hofner frisked Mr. Revels's back and sides, he asked Mr. Revels to roll over. *Id.* at 17. When Mr. Revels did not, Officer Hofner assisted Mr. Revels in turning over. *Id.* Officer Hofner stated that he then began to pat

down the front side of Mr. Revels's body and, in so doing, felt something "reasonably hard" by Mr. Revels's waist that he could not exclude as a possible weapon. Dkt. 73 at 17, 40.[2] At that point, Officer Hofner proceeded to examine the object further to ensure that it was not a weapon. *Id*. Officer Hofner discovered the bag and money shortly thereafter. *Id*.

Although it is somewhat unclear how Officer Hofner first saw the bag and/or saw bills sticking or falling out, the Court finds that the record reflects a sequence of events indicating that the discovery of the money occurred almost simultaneous with Officer Hofner's authorized pat-down of Mr. Revels's frontal waist and that the bills were visible once the bag was seized. *See* Dkt. 73 at 17-19, 56, 95. Other officers present at the scene generally corroborated Officer Hofner's account, and, under a totality of the circumstances analysis, the Court finds that neither Officer Hofner, nor any other officer, exceeded the scope of *Terry* in this case.[3] Indeed, the Court's review of Ninth Circuit and other authority is consistent with this finding. *See United States v. Mattarolo*, 209 F.3d 1153 (9th Cir. 2000); *United States v. Miles*, 247 F.3d 1009 (9th Cir. 2001); *United States v. Muhammad*, 604 F.3d 1022 (8th Cir. 2010).

---

[2] During cross-examination, Mr. Revels's counsel pressed Officer Hofner on whether or not the object in Mr. Revels's waistband was in fact shaped like a weapon. *See* Dkt. 73 at 42-43. Officer Hofner consistently responded that he could not tell for certain. *Id*.

[3] Mr. Revels argues that the resolution of this motion turns in large part on Officer Hofner's credibility and that Officer Hofner has "shifted his testimony to a remarkable degree." Dkt. 61 at 9. Although the Court acknowledges that Officer Hofner's recollection of the events of March 10, 2010, is not entirely clear on the record, it finds that Officer Hofner's accounts were not inconsistent so to undermine his overall credibility.

## C. Inevitable Discovery

At the evidentiary hearing, the Court asked the parties to submit briefing on whether the doctrine of inevitable discovery applies in this case. Under this doctrine, the Government has the burden to demonstrate that, "by following routine procedures the police would inevitably have uncovered the evidence." *United States v. Lopez-Soto*, 205 F.3d 1101, 1107 (9th Cir. 2000); *see also United States v. Lang*, 149 F.3d 1033, 1047 (9th Cir. 1998) (a court must "determine whether a reasonable probability of discovery existed prior to the unlawful conduct, based on the information possessed and investigations pursued at such time"). Based on the briefings submitted, and the record to date, the Court is not prepared to make that determination here. Nonetheless, in light of the Court's finding that the Government had probable cause to arrest Mr. Revels and/or that it did not exceed the scope of a *Terry* frisk, this issue is rendered moot.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendant's Motion to Suppress Evidence is **DENIED.**

Dated this 2nd day of December, 2011

_____
BENJAMIN H. SETTLE
United States District Judge